Richard Thomas EDWARDS,
Petitioner-Appellant,

v.

Harold BRAY, Sheriff of the County of Jefferson; and J. D. MacFarlane, Attorney General of the State of Colorado, Respondents-Appellees.

No. 80–2150.

United States Court of Appeals, Tenth Circuit.

Sept. 13, 1982.

Lee Jay Belstock, Denver, Colo., for petitioner-appellant.

Nathan B. Coats, Chief, Crim. Appeals Unit Enforcement Section, Denver, Colo. (J. D. MacFarlane, Atty. Gen., State of Colo., Richard F. Hennessey, Deputy Atty. Gen., and Mary J. Mullarkey, Sol. Gen., Denver, Colo., with him on the brief), for respondents-appellees.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Richard Thomas Edwards appeals from the district court's denial of his petition for a writ of habeas corpus. On appeal the only issue is whether Edwards' Fifth Amendment privilege against self-incrimination prohibits the introduction into evidence of the results of a roadside sobriety test because the police elicited particular oral statements from Edwards before giving him a *Miranda* warning.

Police officer Thomas J. Dietzman, Jr. stopped Edwards' car about 1:00 a. m. after he observed the car weaving and striking the curb. Dietzman testified that the driver, Edwards, appeared to him to be under the influence of alcohol. The officer asked Edwards whether he was injured or on any medication before asking him to perform a series of balance tests. Dietzman then asked Edwards his educational background and employment before asking him to recite the alphabet. After being convinced by Edwards' performance on these tests that Edwards was intoxicated, the officer handcuffed him and placed him in a patrol unit. Dietzman then gave Edwards a *Miranda* warning and told him he was under arrest.

Edwards moved to suppress the results of the roadside sobriety test, alleging a violation of his Fifth Amendment privilege against self-incrimination. The state trial court denied the motion. A jury found Edwards guilty of driving while under the influence of intoxicating liquor, and the court sentenced him to serve sixty days in the county jail. The Colorado Supreme Court accepted an appeal, consolidated the case with several others concerning the constitutionality of roadside sobriety tests, and affirmed Edwards' conviction. *People v. Ramirez*, 609 P.2d 616 (Colo.1980). Edwards then petitioned for a writ of habeas corpus in federal district court. The court heard the petition and denied the writ. Edwards appealed to this Court.

Edwards contends that the roadside sobriety test Officer Dietzman gave him vio-

lated his constitutional privilege against self-incrimination because the test included interrogation. He asserts that the Colorado Supreme Court in *Ramirez* addressed only the physical, noncommunicative aspects of a roadside sobriety test.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court stated, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." The Court later elaborated on the meaning of interrogation when it considered whether conversation between police officers that prompted a statement by the defendant precluded use of the statement at trial. *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). The Court there stated, "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 S.Ct. at 1689 (footnotes omitted).

We see no constitutional infirmity in the questions asked Edwards. The questions were not "reasonably likely to elicit an incriminating response from the suspect" in the sense condemned by *Miranda* and *Innis*; they were merely part of or incidental to the roadside sobriety test. The officer asked Edwards whether he was injured or on medication to provide necessary background for the officer's decision to administer the sobriety test. Had Edwards answered that he was injured or on medication, Dietzman presumably would not have administered the balance tests, but would have taken other action such as seeking medical care. The officer stated that he asked Edwards his education and employment to establish whether Edwards would know the alphabet; he asked Edwards to recite the alphabet not to obtain testimony, but to test whether Edwards' memory was impaired. Certainly Edwards' inability to recite the alphabet, although his education indicated he should be able to do so when sober, incriminated him. Intoxication increases reaction time and reduces speed of motor responses, including those of auditory discrimination and judgment. 4 Gray, *Attorney's Textbook of Medicine,* ¶ 133.51 (3d ed. 1981). The questions asked here did not require the suspect to disclose his knowledge of his intoxication. They elicited tangible evidence of the physical condition of the suspect's body. The responses were no more testimonial or communicative than a voice exemplar, *see United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973), or a blood sample, *see Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

AFFIRMED.