## BOWERMAN v MacDONALD

Docket No. 90776. Submitted October 1, 1986, at Marquette. Decided
   January 21, 1987. Leave to appeal applied for.

   Elizabeth A. Bowerman brought a paternity action in the Mar-
   quette Circuit Court against Michael MacDonald. The trial
   court, Edward A. Quinnell, J., pursuant to a motion by plain-
   tiff, entered an order directing defendant to submit to a blood
   test. When defendant refused, the trial court gave defendant
   forty-two days to comply, after which a bench warrant would
   issue for his arrest for contempt of court. Defendant appealed,
   claiming inter alia that the trial court violated his privilege
   against self-incrimination or, alternatively, that the trial court
   violated his right to be free from unreasonable search and
   seizure by ordering the test without a prior determination of
   probable cause or reasonable grounds.

   The Court of Appeals *held:*

   1. The Fifth Amendment privilege against self-incrimination
   protects an accused only from being compelled to testify
   against himself or otherwise provide the state with evidence of
   a testimonial or communicative nature. The extraction of blood
   from defendant, being neither testimonial nor communicative,
   would not constitute an infringement of defendant's privilege
   against self-incrimination.

   2. The prohibition against compelled testimony by a putative
   father, as provided in the Paternity Act, likewise concerns only
   evidence of a testimonial or communicative nature and does
   not apply to the test at issue.

   3. A blood test is a search, for purposes of the Fourth
   Amendment, and should not be ordered by a trial court in a

REFERENCES

Am Jur 2d, Evidence § 9.

Am Jur 2d, Searches and Seizures §§ 29, 105.

Am Jur 2d, Witnesses §§ 30 *et seq.*

Physical examination or exhibition of, or tests upon, suspect or
   accused, as violating rights guaranteed by Federal Constitution—
   federal cases. 22 L Ed 2d 909.

See also the annotations in the Index to Annotations under Legiti-
   macy of Children.

paternity action until the plaintiff has presented some proof of paternity from which the trial court can determine that a blood test is justified under the circumstances. In this case, plaintiff had made no showing of paternity apart from filing her complaint when the trial court ordered the blood test and a remand is, therefore, necessary so that plaintiff can present such proof.

Remanded.

1. CONSTITUTIONAL LAW — SELF-INCRIMINATION — PATERNITY ACTIONS — BLOOD TESTS.

The privilege against self-incrimination protects an accused only from being compelled to testify against himself or otherwise provide the state with evidence of a testimonial or communicative nature; the court-ordered extraction of a blood sample from a putative father and defendant in a paternity action is neither testimonial nor communicative in nature and is, therefore, not subject to the privilege against self-incrimination (US Const, Am V; Const 1963, art 1, § 17).

2. EVIDENCE — BLOOD TESTS — PATERNITY ACT.

The provision in the Paternity Act which prohibits the compelled testimony of a putative father only concerns evidence of a testimonial or communicative nature and does not apply to a court-ordered extraction of a blood sample from the putative father, since such extraction is neither testimonial nor communicative in nature (MCL 722.715[a]; MSA 25.495[a]).

3. SEARCHES AND SEIZURES — BLOOD TESTS — PATERNITY ACTIONS.

The extraction of a blood sample from a putative father and defendant in a paternity action constitutes a search for purposes of the Fourth Amendment and should not be ordered by a trial court until the plaintiff has presented some proof of paternity from which the trial court can determine that a blood test is justified under the circumstances (US Const, Am IV).

*Gary L. Walker,* Prosecuting Attorney, and *Mary Lou Strisar,* for plaintiff.

*Richard J. Jason, P.C.* (by *Richard John Jason*), for defendant.

Before: ALLEN, P.J., and CYNAR and R. C. LIVO,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Cynar, J. Defendant appeals from an order directing him to submit to a paternity blood test within forty-two days or be held in contempt, for which he would be jailed for thirty days or until he was willing to comply.

On August 8, 1985, plaintiff filed a paternity complaint, alleging defendant was the father of a child born to plaintiff on January 1, 1985. Plaintiff also alleged that she became pregnant with the child on or about the second week of April, 1984, by defendant and that she was unmarried from conception until birth. Defendant's answer neither admitted nor denied any of plaintiff's allegations, except that defendant did deny being the father.

Plaintiff filed a motion for blood or tissue tests, pursuant to § 6 of the Paternity Act. MCL 722.716(1); MSA 25.496(1). This motion was noticed for hearing to be held before the court on October 11, 1985. If arguments on the motion were actually held, no record of this hearing was made. On October 11, 1985, the court did enter its order directing defendant to submit to blood or tissue tests for any and all purposes allowed by the Paternity Act and court rule.

On October 30, 1985, a pretrial conference was held and a memorandum record of the conference was filed on November 1, 1985. During this conference, defense counsel advised the court of defendant's unwillingness to submit to the court-ordered blood or tissue tests. The court tentatively ruled defendant would be in contempt of court for refusing to comply, for which he would be jailed until he complied or for thirty days, whichever occurred first. The pretrial conference was adjourned to permit defense counsel to confer with defendant. The court instructed that if defendant persisted in his refusal, the parties should submit briefs on the availability of contempt as an enforcement device.

Defendant filed a notice of refusal to submit to the blood or tissue tests on December 4, 1985.

Although noticed by the court as a pretrial conference, the court convened a hearing on January 29, 1986, to decide if contempt was a proper remedy for defendant's refusal to comply with the court's October 11, 1985, order. No testimony was taken, but oral arguments were presented by counsel for the parties. After arguments, the court concluded that it would use contempt sanctions to enforce the order. To afford defendant time to consider an appeal to this Court, the trial court gave defendant forty-two days to comply before a bench warrant would issue. The court's order to this effect was entered February 6, 1986. On February 25, 1986, defendant filed this appeal, and on March 24, 1986, the lower court stayed its order.

On appeal defendant contends that the trial court violated his privilege against self-incrimination by forcing him to take the blood test or, alternatively, that the trial court violated his right to be free from unreasonable search and seizure by ordering the test without a prior determination of probable cause or reasonable grounds. Furthermore, defendant contends that contempt was an inappropriate remedy for his refusal to be tested. The issue of the use of contempt to enforce compliance will not be addressed, however, because we agree with defendant that the court's order requiring a blood test was improper without a prior hearing.

Defendant's first argument is that he should be entitled to assert the constitutional privilege against self-incrimination provided in the Fifth Amendment of the United States Constitution and art 1, § 17 of the Michigan Constitution or the statutory prohibition against compelled testimony

provided in the Paternity Act, MCL 722.715(a); MSA 25.495(a).

The United States Supreme Court has held that blood test results are not protected by the privilege against self-incrimination. The Supreme Court found "that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature, and that the withdrawal of blood and use of the analysis in question in this case did not involve compulsion to these ends." *Schmerber v California,* 384 US 757, 761; 86 S Ct 1826, 1830-1831; 16 L Ed 2d 908, 914 (1966). Michigan's constitutional provision is construed no more liberally than the Fifth Amendment, *Paramount Pictures Corp v Miskinis,* 418 Mich 708, 728; 344 NW2d 788 (1984), and this Court has quoted *Schmerber* with approval, *People v Keen,* 56 Mich App 84, 89-90; 223 NW2d 700 (1974); *People v Gebarowski,* 47 Mich App 379, 383-384; 209 NW2d 543 (1973). Thus, defendant's claim that forcing him to give a blood sample would violate his privilege against self-incrimination is without merit.

Defendant also points to the statutory prohibition against compelled testimony provided in the Paternity Act. The act provides that both parents are competent to testify, but that the putative father cannot be compelled to testify. The statutory prohibition does not indicate it concerns anything more than evidence of a testimonial or communicative nature, however, and a blood test is neither. Thus, the statutory prohibition contained in the Paternity Act provides no broader protection than the Fifth Amendment.

Next defendant contends that the trial court violated his right to be free from unreasonable search and seizure by ordering the blood test

without a prior determination of probable cause or reasonable grounds. We agree that a prior determination must take place before a defendant is ordered to take a blood test; we do not, however, require a finding of probable cause.

*Schmerber* held that although a blood test did not involve the Fifth Amendment "it plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment." *Schmerber, supra,* 384 US 757, 767. The Court explained, "the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances. . . . " *Id.,* 384 US 757, 768. In *Schmerber* the Supreme Court allowed the search and seizure without a warrant because time was of the essence in detecting a blood alcohol level. No such exigent circumstances exist in a paternity suit; evidence will not be lost with the passage of time. Thus, because a blood test is a search which should not be conducted unless justified under the circumstances, we hold that a trial court may not order a blood test until a plaintiff has presented proofs to support the allegations in the complaint. Once a showing of paternity has been presented, a blood test is justified because of the great importance to society that parents care for their children.

We wish to reiterate that we are not requiring a finding of probable cause. A paternity case is only quasi-criminal, *Artibee v Cheboygan Circuit Judge,* 397 Mich 54, 57; 243 NW2d 248 (1976), and a defendant is not afforded a full panoply of criminal procedural protections, *Smith v Robbins,* 91 Mich App 284, 292; 283 NW2d 725 (1979), lv den 408 Mich 853 (1980). For instance, the standard of proof in a paternity trial is not proof beyond a reasonable doubt, but rather the lesser burden of

proof by a preponderance of the evidence. Therefore, because a paternity case is only quasi-criminal, we decline defendant's invitation to use probable cause or reasonable grounds as the test. However, something more than filing a complaint alleging paternity is needed when the answer filed denies paternity. While we are not suggesting extensive proofs, at least sworn testimony by the complainant should be considered.

We remand to the lower court for a hearing in accordance with this opinion. We do not retain jurisdiction.