PEOPLE v GENO

Docket No. 241768. Submitted April 15, 2004, at Grand Rapids. Decided
April 27, 2004, at 9:00 A.M. Leave to appeal sought.

Dale A. Geno was convicted following a bench trial in the Muskegon
Circuit Court, James M. Graves, Jr., J., of first-degree criminal
sexual conduct. He was sentenced as a second-offense habitual
offender to thirty to ninety years in prison. The defendant ap-
pealed.

The Court of Appeals *held*:

1. The Due Process Clause of the Michigan Constitution, Const
1963, art 1, § 17, does not require the electronic recording of
custodial interrogations or confessions.

2. The trial court properly found the defendant's confession to
have been made voluntarily.

3. No plain, outcome-determinative error occurred with regard
to the admission of testimony of the executive director of the
Children's Assessment Center regarding a statement made to him
by the two-year-old victim that implicated the defendant. The
child's statement was nontestimonial evidence. Therefore, the
reliability factors stated in *People v Lee*, 243 Mich App 163, 178
(2000), are an appropriate means to determine the admissibility of
the evidence. Under those factors, no plain, outcome-
determinative error occurred. The statement was properly admit-
ted under the hearsay exception in MRE 803(24) and satisfied the
four factors for admission under that rule stated in *People v Katt*,
468 Mich 272, 279 (2003).

4. The underlying factors considered by the trial court in
sentencing the defendant were clearly objective and verifiable and
were substantial and compelling reasons to support the upward
departure from the sentencing guidelines.

Affirmed.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *Tony Tague*, Prosecuting Attorney,

*Victor A. Fitz*, Senior Assistant Prosecuting Attorney, and *Charles F. Justian*, Chief Appellate Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for the defendant on appeal.

Before: WHITE, P.J., and MARKEY and OWENS, JJ.

OWENS, J. Defendant appeals as of right from his conviction, following a bench trial, of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (sexual penetration with victim under thirteen years of age). The trial court subsequently sentenced defendant as a second-offense habitual offender, MCL 769.10, to thirty to ninety years' imprisonment. We affirm.

Defendant's conviction arises out of the sexual assault of the two-year-old daughter of defendant's girlfriend. When the victim's father picked the victim up from the home of her mother and defendant, he noticed that she was uncomfortable and did not want her father to change her. Once he did, her father noticed irritation and bruising around the child's vaginal area as well as blood in the child's pull-up underpants. Her father contacted Children's Protective Services, which arranged to have an assessment and interview of the child by the Children's Assessment Center. At the interview, the victim asked the interviewer to accompany her to the bathroom. The interviewer noticed blood in the child's pull-up underpants and asked the child if she "had an owie?" The child answered, "yes, Dale [defendant] hurts me here," pointing to her vaginal area.

Defendant was questioned by a city of Muskegon police detective and explained that, some weeks earlier, he had changed the child and may have hurt her. He denied, however, touching her in a sexual way. During

subsequent police interviews, defendant admitted that he was molested as a child, that he was sexually attracted to children, and that he had sexually fantasized about the victim. He also explained that while wiping the victim in the course of changing her, he may have accidentally inserted his finger into the victim's vagina. Defendant later wrote and signed a statement in which he admitted that his finger "penetrated her vaginal lips slightly" and that he "was slightly aroused because my finger accidentally touched her vagina."

Before trial, defendant moved to suppress this statement, arguing that it was coerced by the detectives and that the detectives made promises of leniency and threats that they would prosecute defendant's girlfriend if he did not make the statement. An evidentiary hearing was held at which defendant testified that such promises and threats were made and the detectives testified that promises and threats were not made. The court found that, on the basis of the demeanor and credibility of the witnesses, it believed the detectives, and therefore concluded that threats and promises were not made and that the statement was voluntary. The court also granted the prosecution's pretrial motion to allow the admission of hearsay evidence under the residual exception, MRE 803(24).

On appeal, defendant first argues that trial court should have suppressed all testimony arising out of the custodial interrogations because the police failed to make audio or video recordings of the interrogations. We disagree.

Defendant did not raise this issue of alleged constitutional error below and therefore it is unpreserved on appeal. As such, we will only review for plain error. *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999).

Otherwise, we review claims of constitutional error de novo. *People v Rodriguez*, 251 Mich App 10, 25; 650 NW2d 96 (2002).

The United States Supreme Court has refused to extend the Due Process Clause of the United States Constitution[1] to require that electronic recordings be made of custodial interrogations. *California v Trombetta*, 467 US 479; 104 S Ct 2528; 81 L Ed 2d 413 (1984). However, defendant points to an Alaska case in which the due process provision of the Alaska constitution was construed to require that electronic recordings be made. *Stephan v State*, 711 P2d 1156 (Alas, 1985). Defendant argues that the Due Process Clause of the Michigan Constitution[2] requires the same interpretation. This very question, however, has already been decided by a panel of this Court. In *People v Fike*, 228 Mich App 178; 577 NW2d 903 (1998), we clearly and explicitly rejected the defendant's argument that testimony arising out of his custodial interrogation should be suppressed because it was not tape recorded. We relied heavily on the fact that this is not required by the United States Constitution, stating: " 'the courts of this state should reject unprincipled creation of state constitutional rights that exceed their federal counterparts.' " *Id.*, 185, quoting *Sitz v Dep't of State Police*, 443 Mich 744, 763; 506 NW2d 209 (1993). The panel, after examining the Alaska decision that defendant cites here, also noted that most states have rejected the requirement as being constitutionally mandated.[3] *Fike, supra* at 185.

---

[1] US Const, Ams V and XIV.

[2] Const 1963, art 1, § 17.

[3] The panel did note, however, that many state legislatures have enacted provisions that would require electronically recording custodial interrogations. See also *Fike, supra* at 188 (FITZGERALD, P.J., concurring in part and dissenting in part) (calling for the Legislature to promulgate a statute mandating electronic recording of interrogations).

Ultimately, we concluded that granting the defendant's request would constitute an unprincipled creation of state constitutional rights.

The *Fike* decision is controlling, MCR 7.215(J)(1), and we reject defendant's invitation to create a new legal requirement governing custodial interrogations because we are bound by our prior decision. Therefore, defendant's argument here fails.

Next, defendant argues that the prosecution failed to show that defendant's statements were made voluntarily. We disagree.

Michigan's constitutional provision against self-incrimination, Const 1963, art 1, § 17, is construed in line with and no more liberally than the Fifth Amendment of the United States Constitution. *Paramount Pictures Corp v Miskinis,* 418 Mich 708, 728; 344 NW2d 788 (1984). "The constitutional privilege against self-incrimination protects a defendant from being compelled to testify against himself or from being compelled to provide the state with evidence of a testimonial or communicative nature." *People v Burhans,* 166 Mich App 758, 761-762; 421 NW2d 285 (1988). To determine whether evidence was compelled in violation of this constitutional protection, the trial court must ascertain "whether, considering the totality of all the surrounding circumstances, the confession is 'the product of an essentially free and unconstrained choice by its maker,' or whether the accused's 'will has been overborne and his capacity for self-determination critically impaired . . . .' " *People v Cipriano,* 431 Mich 315, 333-334; 429 NW2d 781 (1988), quoting *Culombe v Connecticut,* 367 US 568, 602; 81 S Ct 1860; 6 L Ed 2d 1037 (1961).

Defendant argued before the trial court that his oral and written statements made to the police were coerced because the detectives made promises of leniency or

otherwise threatened to prosecute defendant's girl-friend if he did not write out the statement. After an evidentiary hearing, however, the trial court found that the detectives' story was more credible and made the factual finding that no such promises or threats were made. On appeal, defendant bases his coercion argument on his contention that threats and promises were made. In *People v Burrell,* 417 Mich 439, 448-449; 339 NW2d 403 (1983), our Supreme Court said:

> This Court will not disturb a trial court's ruling at a suppression hearing unless that ruling is found to be clearly erroneous. Resolution of facts about which there is conflicting testimony is a decision to be made initially by the trial court. The trial judge's resolution of a factual issue is entitled to deference. This is particularly true where a factual issue involves the credibility of the witnesses whose testimony is in conflict. *People v White,* 401 Mich 482; 257 NW2d 912 (1977). See *People v Dinsmore,* 103 Mich App 660; 303 NW2d 857 (1981).

Giving proper deference to the trial court's credibility determination, there were no promises or threats made, and thus the factual predicate for defendant's argument is unsupported. Therefore, defendant's argument here fails.

Next, defendant argues that the court erred in allowing the admission of the hearsay testimony of the executive director of the Children's Assessment Center under MRE 803(24). We disagree.

On appeal, defendant claims that introduction of the child's statement through the testimony of the Children's Assessment Center's executive director violated his constitutional right to confront the declarant. US Const, Am VI; Const 1963, art 1, § 20. Defendant did not raise this issue in the trial court; his only objection was that the statement should not be admitted under

MRE 803(24), and that argument forms the basis of defendant's analysis on appeal. Defendant's evidentiary objection in the trial court was insufficient to preserve his appellate claim of a constitutional violation. *People v Stimage,* 202 Mich App 28, 30; 507 NW2d 778 (1993). Therefore, defendant's claim of lack of confrontation is not preserved for appellate review and we will only review this argument for plain error. *Carines, supra* at 763-764.

Although defendant argues on appeal that admission of the child's statement violated his right of confrontation, his argument is based on the assertion that the trial court incorrectly analyzed the admissibility factors of MRE 803(24) and that the statement was not, in fact, trustworthy and reliable. Defendant's confrontation argument consists of general references in his appellate brief to the protections afforded by the Confrontation Clause, and his citation and brief synopsis of the recent United States Supreme Court decision in *Crawford v Washington,* 541 US ___, ___; 124 S Ct 1354, 1364; 158 L Ed 2d 177, 192-193 (2004), that he filed as supplemental authority just before oral argument. In his discussion of *Crawford,* defendant presents, at best, a cursory argument concerning why the admission of the child's statement violated his constitutional rights under that clause.

Even were we to consider the Confrontation Clause portion of defendant's argument in light of *Crawford* (recognizing that defendant fails to establish that the *Crawford* decision would be retroactively applicable to him when he failed to preserve the confrontation issue at trial), we would find no plain, outcome-determinative error. We recognize that with respect to "testimonial evidence," *Crawford* has overruled the holding of *Ohio v Roberts,* 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597

(1980), permitting introduction of an unavailable witness's statement—despite the defendant's inability to confront the declarant—if the statement bears adequate indicia of reliability, i.e., it falls within a "firmly rooted hearsay exception" or it bears "particularized guarantees of trustworthiness." *Id.* at 66. However, we conclude that the child's statement did not constitute testimonial evidence under *Crawford*, and therefore was not barred by the Confrontation Clause. The child's statement was made to the executive director of the Children's Assessment Center, not to a government employee, and the child's answer to the question whether she had an "owie" was not a statement in the nature of " '*ex parte* in-court testimony or its functional equivalent . . . .' " *Crawford, supra,* 541 US ___; 124 S Ct 1364; 158 L Ed 2d at 193 (quoting the petitioner's brief). In circumstances involving nontestimonial evidence, "it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford, supra,* 541 US ___; 124 S Ct 1374; 158 L Ed 2d 203.

Therefore, we conclude, at least with respect to nontestimonial evidence such as the child's statement in this case, that the reliability factors of *People v Lee,* 243 Mich App 163, 178; 622 NW2d 71 (2000), are an appropriate means of determining admissibility. We have applied that analysis in this opinion. We therefore conclude that defendant has failed to establish plain, outcome-determinative error with respect to his Confrontation Clause claim.

Regarding defendant's claim that the child's statement was improperly admitted under MRE 803(24), a trial court's decision to admit evidence under a hearsay

exception is reviewed for an abuse of discretion. *People v Creith,* 151 Mich App 217, 223; 390 NW2d 234 (1986). "An abuse of discretion exists if an unprejudiced person would find no justification for the ruling made." *People v Watson,* 245 Mich App 572, 575; 629 NW2d 411 (2001), citing *People v Rice (On Remand),* 235 Mich App 429, 439; 597 NW2d 843 (1999). A trial court's decision on a close evidentiary decision does not amount to an abuse of discretion. *People v Sabin (After Remand),* 463 Mich 43, 67; 614 NW2d 888 (2000).

MRE 803(24) provides a residual or "catch-all" exception to the hearsay rule, which allows for the admission of "[a] statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness." Our Supreme Court, in *People v Katt,* 468 Mich 272, 279; 662 NW2d 12 (2003), explained that a statement offered under MRE 803(24) must not be covered by any other MRE 803 hearsay exception. Furthermore, admission of a statement under MRE 803(24) initially requires the establishment of four elements:

> (1) it must have circumstantial guarantees of trustworthiness equal to the categorical exceptions, (2) it must tend to establish a material fact, (3) it must be the most probative evidence on that fact that the offering party could produce through reasonable efforts, and (4) its admission must serve the interests of justice. Also, the offering party must give advance notice of intent to introduce the evidence. [*Katt, supra* at 279.]

The statement in this case does not fall within any other MRE 803 hearsay exception and it satisfies the four MRE 803(24) factors as listed in *Katt.* The victim's statement was made while the executive director was assisting the child to use the toilet (at the child's request) and it was made in response to a nonaccusa-

tory question. After observing blood on the child's clothing, the director merely asked if the child had an "owie." This question did not suggest that the child had received an injury from another person—specifically not one from defendant. This situation was thus similar to a statement of a then-existing mental, emotional, or physical condition, MRE 803(3), or a statement made for the purposes of medical treatment or medical diagnosis in connection with treatment, MRE 803(4). The statement satisfied the second factor because it tended to establish a material fact—that defendant had molested the child. Because the child herself was too young to testify and because it appears this was the child's first statement concerning the source of her injury, this evidence was the most probative that the prosecutor could offer; therefore, the third factor was satisfied. The fourth factor is also satisfied because the statement satisfies the first three factors and admission of this statement—thereby providing the fact-finder with reliable and probative evidence that would otherwise be excluded solely because of the age of the victim—would not endanger the interests of justice. *Katt, supra* at 296.

Finally, the executive director was listed as a witness, the issue was raised before trial, a pretrial evidentiary hearing was held at which the director testified concerning the child's statement and the circumstances under which it was made, and the trial court ruled that the statement was admissible. Defendant therefore had notice, in advance of trial, of the prosecutor's "intention to offer the statement and the particulars of it, including the name and address of the declarant." MRE 803(24); *Katt, supra* at 279.

In *Lee, supra,* a panel of this Court explained what factors should be reviewed in determining whether certain statements have " 'particularized guarantees of

trustworthiness' " as demonstrated by consideration of " 'the totality of the circumstances.' " *Id.* at 174, quoting *Idaho v Wright,* 497 US 805, 819; 110 S Ct 3139; 111 L Ed 2d 638 (1990). The factors include:

> (1) the spontaneity of the statements, (2) the consistency of the statements, (3) lack of motive to fabricate or lack of bias, (4) the reason the declarant cannot testify, (5) the voluntariness of the statements, i.e., whether they were made in response to leading questions or made under undue influence, (6) personal knowledge of the declarant about the matter on which he spoke, (7) to whom the statements were made . . . , and (8) the time frame within which the statements were made. [*Lee, supra* at 178 (citations omitted).]

A review of the record confirms the trial court's findings regarding these factors. The executive director merely asked the victim, "Do you have an owie?" Without any further questioning, the victim replied, "Dale hurts me here." There is no evidence that the victim made any statement inconsistent with her statement that defendant hurt her. The victim cannot testify because of her age; she does not qualify as a witness under MRE 601. The victim made the statements to a professional, who has training in child assessments and interviews, and they were not made in the context of an interview, but rather while the director was assisting the child to use the bathroom. Further, the statement was made only a couple weeks after the crime took place.

The only real concern that defendant points to on appeal is that the victim's father may have had a motive to influence the victim to make the statement, which would go to the factor concerned with a motive to fabricate or bias. However, there is simply no evidence on the record to support defendant's suggestion.

Accordingly, we find that the trial court did not abuse its discretion in admitting the hearsay statements under MRE 803 (24).

Finally, defendant argues that the trial court erred in imposing its sentence by improperly making an upward departure from the sentencing guidelines. We disagree.

" '[T]he existence or nonexistence of a particular [sentencing] factor is a factual determination for the sentencing court to determine, and should therefore be reviewed by an appellate court for clear error. The determination that a particular factor is objective and verifiable should be reviewed by the appellate court as a matter of law. A trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence shall be reviewed for abuse of discretion.' " *People v Babcock,* 244 Mich App 64, 75-76; 624 NW2d 479 (2000) (*Babcock I*), quoting *People v Fields,* 448 Mich 58, 77-78; 528 NW2d 176 (1995) (citations omitted); see also *People v Babcock,* 469 Mich 247, 264-265; 666 NW2d 231 (2003) (*Babcock II*).

The ultimate authority to provide penalties for criminal offenses is constitutionally vested in the Legislature. Const 1963, art 4, § 45. Accordingly, a trial court may depart from the legislatively promulgated sentencing range only when allowed by the Legislature. *People v Hegwood,* 465 Mich 432, 439; 636 NW2d 127 (2001). Under MCL 769.34(3), "A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in chapter XVII if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure." The factors relied on by a court in finding a

"substantial and compelling" reason must be objective and verifiable. *Babcock I, supra.*

The trial court's reasons for the upward departure included: the guidelines did not give sufficient weight to the danger defendant posed to young children; this conviction was defendant's fourth CSC conviction involving young children (and his second one involving a two-year-old child); defendant was an adult and, despite the fact that a substantial amount of time had passed since his previous convictions, nothing had changed because he was now committing the same offense again; and an upward departure was necessary for the "future protection of small children."

Defendant characterizes the trial court's reason for the departure as based on "future dangerousness" and argues that this reason is not objective and verifiable. Plaintiff argues that the trial court's reasoning was based on factors such as defendant's past record, defendant's failure to rehabilitate himself, and defendant's disturbing sexual attraction to young children.

Objective and verifiable factors are those that are external to the minds of the judge, defendant, and others involved in making the decision, and are capable of being confirmed. *People v Abramski,* 257 Mich App 71, 74; 665 NW2d 501 (2003). Though the trial court's statements on the record mention the future risk that defendant poses to small children, we find that the actual underlying factors the court considered were defendant's past criminal history of sex crimes with children, his admitted sexual attraction to children, and his repeated failure to rehabilitate himself when given the opportunity. These underlying factors are clearly objective and verifiable and are substantial and compelling reasons to support his upward departure.

Moreover, we have, on a prior occasion, sustained an upward departure in sentencing on the basis of the fact that the sentencing guidelines did not adequately consider the defendant's "sexual attraction toward little boys" and that the guidelines did not adequately consider "the need to protect other children . . . ." *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001). Accordingly, the court did not err in imposing its sentence on defendant.

Affirmed.